Kirkpatrick, C. J.
— The act to alter the law directing the descent of real estates, passed 1782, expressly declares that nothing therein contained shall in any way affect the widow’s right of dower.
With this act full in their view, the legislature pass another act, in 1799, entitled “An act relative to dower,” in which it is enacted that until dower be assigned her it shall *266 and may be lawful for tbe widow to remain in and to hold and enjoy the mansion house of her husband, and the messuage or plantation thereto belonging, without being liable to pay any rent for the same.
Now, by common law, before the act of 1782, where the husband was seized during the coverture of one manor, or one plantation, as in the present case, the widow was entitled to the third part thereof, to be admeasured to her by metes and bounds, in one body, if the whole were arable, or in different parcels, if it consisted of diverse sorts of land, as arable, wood, meadow, &c. And though the husband should have devised such plantation by will, to be divided into many parts, this did not affect the widow's right; she was not obliged to resort to every devisee, and to take one-third part of each dividend ; she was still entitled to one-third part of the whole. Indeed, had it been otherwise, it would, in most instances, have greatly lessened, if not wholly destroyed, the value of the dower. The legislature, when they changed the law of descents, saw that this difficulty might be raised, and expressly provided against it. Therefore the law in this respect is precisely the same as it formerly was. The widow is not compellable to take for her dower one-third of each child’s dividend. She is entitled to one-third of the whole. Under the act of '99, then, which says the widow shall enjoy the mansion house of the husband, [*] and the plantation thereunto belonging, until the dower shall be assigned to her, without rent, &c., the only question, I think, that can be raised, is/ whether in this case the dower has been assigned. And certainly, according to the principles above stated, it has not.
The levy, therefore, upon the growing crop, in the case stated, was unlawful, and of course all proceedings under it were unlawful. This action cannot be sustained. There must be judgment of nonsuit.
Much has been said about the inconvenience, and even *267 injustice resulting from this act under this strict construction of it. It cannot be dissembled that it is liable to this objection. But the remedy must be [207] sought in the legislative power. We cannot- set aside laws because we think them inconvenient or unjust.
Rossell, J. — Said that he was of opinion that this action could not be sustained, that the widow was entitled to have her whole dower assigned before she could be dispossessed.
Pennington, J.
— This case presents a singular combination of unusual proceedings, growing out of our local law, founded on ordinary occurrences. These difficulties will always happen, when the drawer of legislative acts, does not carefully view the whole subject before him, and provide for the changes and contingencies that are caused by, or likely to grow out of them.
A man seized of a house and homestead plantation, died in August, 1800, intestate, leaving a widow and five children, in a state of infancy. In December, of the same year, the widow marries; and she with her husband, continued to live on the premises, taking care of, and maintaining all the children; and in 1801, put in the ground a crop of wheat and rye, in the course of husbandry. Sometime in 1801, a stranger gets possession of one of the infants, and becomes guardian to it, and without assigning dower to the widoAV, applies to the Orphan's Court in behalf of his Avard; and [*] hath the farm divided by order of the court. On the diATision being made, the guardian offered to the widow a written assignment of one-third of the portion allotted to his Avard, as her dower, which the AvidoAV and her husband refused to accept of. In order to defray the expenses of the partition, an assessment Avas made, and Avarrants of distress issued to levy the sum assessed against the property of the four infants, remaining Avith the mother. Under these warrants, the sheriff, in June, 1802, sold the crop of Avheat and rye before mentioned, (it then being growing on the ground) *268 as saleable property of the infant children, found on -their land. The guardian before mentioned, purchased the crop at this sale; this was done without the consent of the widow or her husband, and against their will. Notwithstanding this sale, the widow and her husband cut down and gather in the grain, and convert it to their own use; on which the guardian, as purchaser at sheriff’s sale, brings this action of trover for the grain. The important inquiry is, was the property of the wheat and rye, at the time of the conversion, so vested in the plaintiff as to enable him to maintain an action of trover and conversion for it. The second section of our act of Assembly, relative to dower, Pat. 343, enacts as follows: “ That until such dower be assigned to her, it shall be lawful for the [208] widow to remain in, and hold and enjoy the mansion-house of her husband, and the messuage or plantation thereunto belonging, without being liable to pay any rent for the same.” The defendant contends that dower not having been assigned to the widow, under the foregoing section, she is entitled to the use and enjoyment of the plantation until dower shall be assigned her. I am clearly of opinion, that the offer made by the guardian to the widow, was no assignment of dower, and ought to pass for nothing. The widow is not to have her dower assigned her by piecemeal, out of the separate rights of the various persons entitled to the inheritance under our act altering the law of descent, but [*] I apprehend that one heir before partition is competent to assign dower for the whole, especially in cases where the other heirs refuse, or are not in a capacity to join in the assignment.
I do not say, that partition may not be made before the assignment of dower; but it is certainly inconvenient to do it; and if it is done, it must be subject to the widow’s right, and is not to injure her in the assignment; but she is to have her dower the same as though no partition had been made; nor can it in any way affect the means given her by the *269 act to enforce the assignment of dower. And it is difficult for me to perceive how the positive language of the act is to be avoided. We are told however, by the learned counsel for the plaintiff, that the possession of the widow is a possession sub modo, a possession according to right; that is, of a third part in her own right of dower; and the remainder as guardian in socage to her children. Supposing that this doctrine was true, in its fullest extent, even to the vesting in the children a right to the grain growing on the land, sown by the mother, in proportion to their right, this action could not be maintained; for in this case the widow Avould be a joint tenant of the grain Avith her children. The right of the children is only sold; the purchaser Avould be a joint tenant Avith the AvidoAV; and no rule appears to be better established than this, that one joint tenant, or tenant in common, cannot bring trover against another.
I apprehend, hoAvever, that the possession of the widow, is not in the manner suggested by the plaintiff’s counsel. It is clear, the widoAV cannot assign dower to herself; she must, therefore, either be considered as protected in the possession by the statute, or as holding the whole as guardian in socage to her children, they being under the age of fourteen years. I incline to think, that she is protected by the statute. How far she may hereafter be compellable to account to her children for the rents, issues, and profits of their portions [*] of the estate, is not iioav to be determined. But supposing that she is not protected in her [209] possession by the statute, but is to be considered as holding the lands in socage for her children; I apprehend, that in this vieAV of the subject, the grain growing on the land, cannot be considered as the property of the children, but that the property of the produce of the land is in her; and that she must account to her A¥ards for the same.[1] A guardian in socage hath uot a bai’e authority, but an authority *270 coupled with au interest; he may grant copy-hold estates in his own name; he is dominies pro tempore; he may make leases to continue during the guardianship, and' may take the profits to his own use, though he shall account for them. Bac. 415; Cro. Jac. 55, 59. And this is perfectly reasonable ; else how is he to idemnify himself for the money and labor expended in putting a crop in the ground, and other necessary improvements of the land of the ward, or for his own labor and pains. If therefore, the property of the crop was in the widow, as guardian in socage, it could not be levied on, and sold as the property of the infants, as is stated in the case to have been done. If the infants had no right, none could be sold; and the purchaser obtained nothing by the contract, and of course had-no property in the wheat and rye, for the conversion of which, this action was brought. Whichever way it is taken, whether the widow is protected by the statute, to be considered as guardian in socage to her children, or as having a possession partly in her own right, and partly in the right of her children, this action is equally unsustainable. I am therefore, of opinion, that judgment of nonsuit must be entered.
Judgment of nonsuit.
Distinguished in Garrison Re. 2 McCart. 393.
Costra, Budd v. Hiler, 3 Dutch. 431.

 S. P. 5 John’s Rep. 66. — ED.

 Vide ante, *125, *130. — Ed.